# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**ROGER WEESE,**
**Claimant Below, Petitioner**

**FILED**
**April 10, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 22-ICA-247**     (JCN: 2021013416)

**HARRY GREEN CHEVROLET, INC.,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner Roger Weese appeals the October 27, 2022, order of the Workers' Compensation Board of Review ("Board"). Respondent Harry Green Chevrolet, Inc., ("HGC") filed a timely response.[1] Petitioner did not file a reply. The issues on appeal are whether the Board erred in affirming the claim administrator's January 19, 2022, order closing Mr. Weese's claim for temporary total disability ("TTD") benefits and in affirming the claim administrator's January 24, 2022, order denying a request for authorization to perform a repeat MRI.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Weese was injured on January 4, 2021, while working as an auto technician at HGC's car dealership in Clarksburg, West Virginia. While checking a wheel bearing, Mr. Weese's right hand was caught between a moving car tire and a strut, which fractured the fifth metacarpal of the hand and injured his back. He went to the dealership's main office to report the injury, applied ice to his hand, and noted the onset of burning pain going down his right leg. Despite escalating symptoms, Mr. Weese continued working until January 12, 2021, when he sought medical treatment. He initially went to a chiropractor but reported that the chiropractor directed him to seek an MRI at a hospital emergency department. Mr. Weese presented at the United Health Center ("UHC") emergency department in Bridgeport, West Virginia, on January 20, 2021, and described back pain

---

[1] Petitioner is represented by J. Thomas Greene, Jr., Esq. and T. Colin Greene, Esq. Respondent is represented by Jeffrey M. Carder, Esq.

1

radiating into his right leg following the January 4, 2021, work injury. X-rays were taken and interpreted to show no acute abnormality, and Mr. Weese was diagnosed with low back pain and right-sided sciatica.

On January 26, 2021, Mr. Weese was seen by Russell Biundo, M.D., and Gary Barcinas, PA-C, at the West Virginia University UHC Department of Neurosurgery. They noted that Mr. Weese had a reduced range of motion and grip strength in his right hand, limited by pain; a positive straight leg raise test on the right; and a flexed forward posture with antalgic gait. Dr. Biundo stated that Mr. Weese exhibited evidence of lumbar radiculopathy, lumbar strain, and possible lumbar herniated disc. Dr. Biundo ordered a right hand x-ray and a lumbar spine MRI. Diagnoses were lumbar radiculopathy, lumbar herniated disc, right hand pain, and metacarpal bone fracture.

Mr. Weese was seen again on January 29, 2021, by Ashley Yelinek, D.O., who found right hand swelling and tenderness. X-rays taken at the prior visit were interpreted to show a distal fifth metacarpal fracture and the WC-1 form was completed at this appointment, stating that the fracture and an injury to the back were occupational injuries, and that Mr. Weese would be off work for more than four weeks. On February 1, 2021, Mr. Weese's claim was held compensable for "right hand injury and low back," and he was granted TTD benefits from January 12, 2021, through February 1, 2021.

Mr. Weese underwent a lumbar MRI on February 5, 2021, that showed multilevel degenerative changes of the lumbar spine at all levels and a right paracentral disc extrusion with annular tear that extended superiorly at L4-5. Rachel Gregis, APRN, at the WVU Medicine, Physiatry, Spine and Pain Center at UHC, wrote a letter that day stating that Mr. Weese would remain off work until his next follow-up appointment due to his lower back condition.

On April 13, 2021, Christopher Martin, M.D., performed an independent medical evaluation ("IME") on behalf of HGC. Dr. Martin noted that Mr. Weese reported that his right hand was improving but that he had sharp pains in his fractured finger if he bumped his hand, and a "buzzing" sensation in the tip of his right thumb after his cast was removed. He also described a burning pain in his lower back that radiated into his right leg, and pain with walking and standing for more than ten minutes. Dr. Martin noted that Mr. Weese expressed anxiety about being off work and a strong motivation to return. Based on his physical examination, Dr. Martin found that Mr. Weese had not reached maximum medical improvement ("MMI"), particularly with respect to his lower back condition. He stated, "it is worth noting that his very significant hand fracture was not diagnosed until 22 days after the date of injury, never treated symptomatically, and he reports that it is improving. This is not a man to exaggerate or overrepresent his symptoms." Dr. Martin opined that Mr. Weese sustained a strain-type injury to his lumbar region, and that the extrusion and annular tear at L4-5 arguably could have been caused by trauma and could be the source

2

of his pain in the absence of any obvious neural impingement. Otherwise, he found that the imaging findings on the MRI:

> are very common, nonspecific, age-related findings and I do not believe these are related to either his injury of January 4, 2021, or his low back symptoms. These findings are all reported to be mild. At all levels except L4-5, there is no canal or foraminal narrowing. At the L4-5 level, the narrowing is described as mild, but bilateral, which does not correlate with his unilateral, right-sided symptoms.

Dr. Martin did not believe that CT guided nerve blocks would give Mr. Weese any great benefit, but also felt it would not be unreasonable to pursue a trial of one injection as "medically necessary to treat the injury under this claim on the grounds that the extrusion and annular tear at the L4-5 level may be related to the injury." Alternatively, he recommended four to eight weeks of physical therapy as medically necessary for the low back sprain that he found was causally related to the injury. Dr. Martin anticipated that Mr. Weese would reach MMI in approximately four months and should be seen again for a final impairment rating for both injuries at that time.

Mr. Weese pursued physical therapy but reported that it exacerbated his low back symptoms. Through the summer of 2021, he was treated for flares of back pain about every two weeks that lasted two or three days. In July of 2021, he went to the Stonewall Jackson Memorial Hospital emergency department for acute worsening of his lumbar spine which radiated to his bilateral lower extremities and was treated with intramuscular injections and oral steroids. He reported constant numbness and some weakness from his right knee to his right foot. Ms. Gregis diagnosed strain of lumbar region, subsequent encounter; lumbar radiculopathy; and lumbar herniated disc, and recommended injections to address his symptoms. Mr. Weese returned to Ms. Gregis on September 8, 2021, and reported some improvement. Later that fall he restarted physical therapy to continue work conditioning. On October 29, 2021, Mr. Weese reported significant improvement after six weeks of therapy but still had some limitations, and his pain was reported to be at one on a ten-point scale.

On November 1, 2021, Joseph Grady, M.D., performed an IME at the employer's request. Dr. Grady's report states that the referral letter he received listed the compensable conditions as "right hand fracture and lumbar sprain." He found that Mr. Weese's hand injury had resolved, but that he continued to have lower back pain. He assessed healed right hand fifth metacarpal fracture and lumbar sprain superimposed upon preexisting multilevel lumbar spondylosis. Dr. Grady found that Mr. Weese had reached MMI regarding both conditions and was in need of no additional treatment.

On November 10, 2021, Mr. Weese saw Mr. Barcinas at Dr. Biundo's office for follow-up regarding his lumbar spine and reported his pain was at zero on a ten-point scale.

3

His physical exam was unremarkable except for an antalgic gait pattern. Mr. Barcinas assessed lumbar strain and lumbar herniated disc and ordered a repeat MRI to assess Mr. Weese's status. On November 17, 2021, Mr. Barcinas submitted a request for authorization for the MRI and a follow-up appointment with Dr. Biundo.

On November 30, 2021, the claim administrator issued a notice of TTD suspension. On December 3, 2021, Dr. Biundo submitted another request for authorization for a repeat MRI, noting the lumbar herniated disc as the basis for the request. On January 19, 2022, the claim administrator closed the claim for TTD benefits, stating that it had not received additional medical evidence that Mr. Weese remained disabled after the notice of suspension was issued. Then, by order dated January 24, 2022, the claim administrator denied the request for the repeat MRI. Mr. Weese protested both orders.

Mr. Weese was deposed on February 28, 2022, and testified that his employer said he needed to be released to return to work by Dr. Biundo before he could return, but that Dr. Biundo wanted to do the repeat MRI before releasing him. Mr. Weese stated that he could not afford to pay for the MRI out of pocket. He also reported that he had functional limitations as a result of his back injury, including doing simple tasks and sleeping.

In its order dated October 27, 2022, the Board affirmed the closure of TTD benefits and the denial of the repeat MRI. As to TTD benefits, the Board noted that West Virginia Code § 23-4-7a (2005) suspends TTD benefits, once commenced, at the earliest of three events: (1) upon information that the claimant has reached MMI; or (2) has been released to return to work; or (3) has actually returned to work. Here, Dr. Grady found that Mr. Weese had reached MMI on November 1, 2021, and needed no further treatment for his compensable injuries. The Board explained that the fact that Dr. Biundo requested a lumbar MRI for further evaluation of Mr. Weese's lumbar herniated disc does not affect Dr. Grady's finding of MMI in regard to the compensable conditions in this claim because lumbar herniated disc is not a compensable condition and there is no evidence that Dr. Biundo or anyone else requested that it be added as a compensable condition. Therefore, the Board concluded that the weight of the evidence established that Mr. Weese's compensable conditions were at MMI, which appropriately triggered the closure of the TTD benefits. As for the denial of request for a repeat lumbar MRI, the Board noted that the claim administrator is required to provide medically related and reasonably required medical treatment for the compensable conditions in the claim. However, as observed previously, lumbar herniated disc is not a compensable diagnosis in the claim, and the Board found there was no evidence to indicate that a repeat lumbar MRI was medically necessary for treatment of a compensable condition in the claim. Accordingly, the Board concluded that Mr. Weese failed to demonstrate by a preponderance of the evidence that a repeat lumbar MRI was medically necessary and reasonably related to the compensable injury in the claim. It is from the Board's order that Mr. Weese now appeals.

4

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under West Virginia Code § 23-5-12a(b) (2022), as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1)    In violation of statutory provisions;
> (2)    In excess of the statutory authority or jurisdiction of the Board of Review;
> (3)    Made upon unlawful procedures;
> (4)    Affected by other error of law;
> (5)    Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6)    Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, __ W. Va. __, __, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, Mr. Weese argues that the Board erred in affirming the closure of his TTD benefits because he had not been released to return to work and was still in need of additional treatment, including the repeat lumbar MRI, thus invalidating Dr. Grady's opinion that he needed no further treatment. Mr. Weese also submits that Dr. Grady's opinion that Mr. Weese's back injuries were "superimposed" on a preexisting condition is unpersuasive because of the clear evidence that his lumbar spine contained only mild degenerative changes with the exception of the disc extrusion with annular tear at L4-5. Mr. Weese further argues that Dr. Martin's IME report opined that the extrusion and annular tear may have been related to his work injury and that it was medically necessary to treat the injury with injections, further undermining Dr. Grady's position that Mr. Weese's symptoms were the result of preexisting issues rather than the work injury. Mr. Weese posits that it is undisputed that he worked full duty without restrictions and without back symptoms prior to the work injury, and developed debilitating symptoms after the injury, therefore creating a rebuttable presumption that his herniated lumbar disc is the result of his workplace injury, pursuant to Syllabus Point 5, *Moore v. ICG Tygart Valley, LLC,* 247 W. Va. 292, 879 S.E.2d 779 (2022). Accordingly, Mr. Weese argues that the Board erred in affirming the claim administrator's denial of the authorization for the repeat MRI on the basis that Dr. Grady found Mr. Weese at MMI and without need for additional treatment.

Upon review, we find no error in the Board's conclusions. The evidence of record indicates that lumbar herniated disc is not a compensable condition in the claim and that no medical provider has submitted a Diagnosis Update requesting that it be added.[2] Because lumbar herniated disc is not a compensable condition, it is not a proper basis to prevent the closure of TTD benefits or for requesting additional medical treatment in this claim.

Accordingly, we affirm the Board's October 27, 2022, order.

Affirmed.

**ISSUED:** April 10, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen

**DISSENTING**:

Judge Thomas E. Scarr

Scarr, J., dissenting:

I respectfully dissent from the majority's opinion because the claimant should not be held at fault for the claim administrator's inadequate diagnosis. The Board affirmed the closure of TTD benefits on the basis that lumbar herniated disc was not a compensable condition of the claim when it is arguably covered by the compensable condition of "low back." Further, the Board affirmed the denial of a repeat MRI for lumbar herniated disc, as it was not a compensable condition in the claim. Contrary to the majority's opinion, the compensable condition in the claim is "low back," which is so broad it cannot be said to exclude annular tear/herniated disc.

Accordingly, this case should have been reversed.

---

[2] Moreover, because no medical provider has submitted a Diagnosis Update requesting that lumbar herniated disc be added as a compensable condition in this claim, we decline to address Mr. Weese's argument regarding whether there exists a rebuttable presumption that his herniated lumbar disc is the result of his workplace injury pursuant to *Moore.*